```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF ALABAMA
                  SOUTHERN DIVISION

REGINALD HIGH,                  }
                                }
     Plaintiff,                 }
                                }        CIVIL ACTION NO.
v.                              }        05-AR-1459-S
                                }
WAL-MART STORES EAST, L.P.,     }
                                }
     Defendant.                 }
```

## MEMORANDUM OPINION

Before this court is the motion of defendant, Wal-Mart Stores East, L.P. ("Wal-Mart"), for summary judgment as against plaintiff, Reginald High ("High"). High sues under 42 U.S.C. § 1981, claiming that he was terminated from his employment with Wal-Mart because of his race, black. There are two alleged bases for his claim of race discrimination: first, that he was terminated for conduct which, when committed by a white employee, resulted only in a warning; and second, that he was replaced by a less qualified white. Wal-Mart, under Rule 56 of the Federal Rules of Civil Procedure, says that High can neither establish a *prima facie* claim nor prove that its reasons for terminating him were pretext.

This court agrees with Wal-Mart that High has failed to establish a *prima facie* case. For the reasons that follow, Wal-Mart's motion for summary judgment will be granted.

Wal-Mart's separate motion to strike portions of the evidence

1

submitted by High will be moot.

### *I. Facts*[1]

In January 1995, High, a black male, was hired by Wal-Mart to work as an unloader at the Inverness, Alabama Wal-Mart location. In the course of the next several years, High was promoted twice, eventually being selected as the Inventory Control Specialist Team Leader in April 2002. The individual responsible for High's promotion was his boss, Glenn Smith ("Smith"), the store manager at Inverness. As store manager, Smith is empowered to terminate employees of High's status without review by other members of Wal-Mart's management staff. Smith is a Caucasian male. According to High, the two men had "a good working relationship."

In January 2004, Smith was approached by Crystal Quinn ("Quinn"), a Caucasian female sales associate. Quinn informed Smith that she had been sexually harassed by High. She accused High of "coming up behind her" in the employee lounge, hugging her, and "grab[bing] her breast." Smith instructed Quinn to put her

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. F.R.Civ.P. 56(c); see *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). In assessing whether the movant has met its burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993). In accordance with this standard, this statement of facts includes both undisputed facts and, where there is a dispute, the facts according to the non-movant's evidence, and the legitimate inferences therefrom.

statement in writing.  In her report, Quinn detailed a number of additional allegations against High, including harassing comments and physical touching and hugging.  Quinn's written statement also alleged that another female coworker, Catherine Widner ("Widner"), had witnessed High's sexually harassing conduct.  Smith, investigating Quinn's allegations, interviewed Widner, who prepared a written statement corroborating Quinn's allegations and complaining that she, too, had been harassed by High. Specifically, she alleged that High told her of her "beautiful mouth" and that "he would like to find out" if Widner was a "good kisser."  A number of other women also came forward, each with her own allegations against High.  These women, including Brianne Dixon and Carol Scott, also claimed that High had hugged and touched them in an inappropriate and harassing manner.

    Having completed his investigation, Smith met with High, who admitted to some of the allegations but denied that his conduct constituted harassment.  Despite High's denials, Smith determined that High had violated Wal-Mart policy.  However, before terminating High, Smith made contact with the Wal-Mart district manager, Britt Wood ("Wood"), to discuss the appropriate action. In turn, Wood contacted Wal-Mart's Regional Personnel Manager, Tammy Schueurell ("Schueurell"), who discussed with Wood the proper procedures for handling a matter of this sort.  Based on his conversations with Schueurell and his review of the multiple

written statements made by female employees, Wood concurred with Smith's determination that High had committed impermissible harassment and had violated Wal-Mart policy.  Shortly after his initial meeting with High to address the charges, and after his conversation with Wood, Smith informed High that he was being terminated.  Smith testified at his deposition that the basis for his decision was his conclusion that physical touching had taken place.  Smith filled out an Exit Interview Form for High, stating that the reason for High's termination was "gross misconduct."

After being terminated, High availed himself of Wal-Mart's "open door" policy,[2] and personally appealed to Wood, stating that he did not intend his conduct to be harassment.  High also spoke with Schueurell about his termination, admitting to her that he had hugged his coworkers.  After her interview with High, Schueurell reviewed the statements made by High's coworkers and spoke with Smith about the matter.  She called High to inform him that his termination would stand.  Undeterred, High moved yet one more step up the Wal-Mart chain of command and spoke with Kelvin Lynch, the manager of Regional Operations.  As before, Lynch informed High that, based on the information produced by the investigation, High's termination would stand.  After exhausting Wal-Mart's open door policy, High brought suit in this court.

---

[2] The open door policy permits Wal-Mart employees with a grievance to appeal an employment decision to the decision-maker's supervisor.

4

### *II. Legal Standard*

Although the familiar *McDonnell Douglas* burden shifting scheme was developed in the context of a discriminatory hiring claim, it is equally applicable to a claim of discriminatory discipline. *Jones v. Gerwens*, 874 F.2d 1534, 1539 (11th Cir. 1989). Initially, under the *McDonnell Douglas* framework, the plaintiff must establish a *prima facie* case of discrimination. Once the plaintiff has established a *prima facie* claim, the employer must respond with legitimate, non-discriminatory reasons justifying its employment action. Finally, the burden returns to the plaintiff, who must prove that the reasons proffered by the employer are pretext for unlawful discrimination. Id. *Miranda v. B&B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1528 (11th Cir. 1992) (adopting the *McDonnell Douglas* framework).

**a)** *High's* **Prima Facie** *Case:*

In order to establish a *prima facie* case of discrimination based on circumstantial evidence, a plaintiff must show that: (1) he/she is a member of a protected class; (2) he/she was subjected to an adverse employment action; (3) the employer treated similarly situated employees who are not members of his/her protected class more favorably, and (4) he/she was qualified for the job or benefit at issue. *Bass v. Bd. of County Comm'rs, Orange County, Fla.*, 256 F.3d 1095, 1104 (11th Cir. 2001). In cases alleging racial bias in the application of discipline for violation of work rules, a

5

plaintiff "must also show either: (a) that he did not violate the work rule, or (b) that he engaged in misconduct similar to that of a person outside the protected class, and that the disciplinary measures enforced against him" were more severe than those enforced against other employees.[3]  *Jones*, 874 F. 2d at 1540.

Wal-Mart acknowledges that High has established the first, second, and fourth elements of a *prima facie* claim.  The third element, whether or not Wal-Mart treated similarly situated Caucasian employees more favorably, is the only one at issue here. The Eleventh Circuit has explained that "[w]hen a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated," the court must evaluate "whether the employees are involved in **or accused of** the same or similar conduct and are disciplined in different ways. *Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006) (quoting *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999)) (emphasis added).  It is important to emphasize that this court need only ascertain the nature of the charges, not their ultimate veracity.  In other words, at the summary judgment phase, it is not necessary for either side to establish that High did or did not commit the acts

---

[3] Although High denies committing a number of the acts of which he is accused, he has admitted to conduct, including hugging, which Wal-Mart reasonably concluded was violative of its workplace policy.  It is therefore impossible for High to prove that he did not violate the work rule in question.  His claim, therefore, must rest on receiving discriminatorily severe punishment.

of which he is accused.  Instead, for High to establish a *prima facie* claim under Title VII, he must show that there exists a comparator who was accused of the same conduct as High, but who received a lesser punishment.  If he is unable to do so, summary judgment in favor of Wal-Mart is called for.

When evaluating the similarity of the conduct in question, the Eleventh Circuit requires "the quantity and quality of the comparator's misconduct to be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."  *Maniccia*, 171 F.3d at 1368.[4]  To put it another way, the role of this court is to "prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments."  *Wilson v. B/E Aerospaces, Inc.*, 376 F.3d 1079 (quoting *Lee v. GTE Florida, Inc.*, 226 F.3d 1249, 1254 (11th Cir. 2000)).  With these standards in mind, this court must determine whether High has presented evidence to support a jury finding that a Caucasian employee who committed a substantially similar act of misconduct received more favorable treatment.

**b) Nature of High's Conduct:**

---

[4] The "nearly identical" standard articulated in *Maniccia* is binding on district courts in the Eleventh Circuit despite a later panel decision requiring only that conduct be "similar." *Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1334 (11th Cir. 2000).  This matter is discussed in *Burke-Fowler*, 447 F.3d at 1323 n.2.

High argues that he was terminated for the inappropriate or harassing verbal remarks he made in the workplace and not in response to the allegations of physical misconduct. It is perfectly understandable that he would make such a claim: he will have a much easier time establishing the existence of a similarly situated coworker if the basis for his termination is verbal harassment alone. However, other than High's conclusory assertions to that effect, the only evidence he offers in support of this argument is the entry made on the Exit Interview Form (the "Form"), drafted by Smith, which gave High written notice of his termination. According to High, this document "clearly indicates" that there was only one basis for High's termination; namely, making a single inappropriate comment to a coworker advising her that she should "let a black man take care of [her]." This interpretation of the Form, however, is incomplete and misleading.

The Form contains a check-list section listing a variety of reasons for terminating an employee. On High's form, his supervisor, Smith, indicated, by checking the appropriate box, that High was terminated for "gross misconduct." While it is true that Smith noted on the Form that High had made an "inappropriate comment to another associate," this court is not thereby compelled to conclude that the sole basis for High's termination was his verbal comments alone. Having specified "gross misconduct" as the basis for termination, Wal-Mart does not bind itself to claiming

only gross verbal misconduct in the form of a verbal comment in the section calling for recommendations regarding the terminated employee's suitability for rehire. To put it slightly differently, the fact that Wal-Mart did not mention the alleged physical misconduct on the Form does not mean it did not rely upon it in terminating High. Wal-Mart is not stuck, forever and a day, with what it put on a piece of paper at the moment of termination.

Wal-Mart offers a litany of alleged instances of physical misconduct committed by High that, in its view, constituted sexual harassment, including unwanted hugging, touching, and breast groping. A thorough investigation was made into these allegations, and Wal-Mart management was satisfied that the conduct did, in fact, occur. Unsurprisingly, High denies a number of these allegations. He does, however, admit to hugging various employees and admitted to a supervisor that he felt he had been terminated because of allegations related to his "hugg[ing] people all the time." He even questioned the propriety of being fired for hugging when he had not been disciplined for similar conduct in the past. Given the uncontested evidence in this case, this court is forced to conclude that the physical acts attributed to High were, at least partially, the basis for his termination.

### c) The Purported Comparator:

High's attempt to establish a *prima facie* claim rests on the conduct and disciplining of Russell Hughes ("Hughes"), a Caucasian

male occupying a position similar to High's.[5]  It is uncontested that, shortly after High's termination, Hughes was given a one day, unpaid suspension and a written reprimand for making three verbal statements to female employees which contained sexual innuendo. According to High, Hughes's conduct was "not only exactly the same as High's, it was worse."  If this were, in fact, the case, High would have sufficiently made out a *prima facie* § 1981 case. However, this court disagrees with High's characterization of Hughes's conduct and finds that the allegations against Hughes were not substantially similar to those allegations made against High.

In evaluating the *prima facie* sufficiency of disparate discipline claims, courts are called upon to measure the similarities between the conduct of purported comparators.  Among the most important factors considered in this analysis are the nature and seriousness of the offenses committed.  *Silvera v. Orange County School Board,* 244 F.3d 1253, 1259 (11th Cir. 2001). Given that the burden is on the plaintiff to establish the requisite similarity, he or she must do so with some specificity. See *Roy v. Broward Sheriff's Office*, 160 Fed. Appx. 873 (holding against a plaintiff who claimed purported comparators had violated the same section of a procedure manual, but who did not offer any

---

[5] The pleadings discuss a number of other purported comparators.  However, none of them can remotely be considered to have engaged in conduct similar to that of High and/or received a less severe punishment than High.

10

specifics as to the nature of the misconduct).

In evaluating such claims, the Eleventh Circuit has, for example, distinguished between an employee who admitted to taking money from a cash register and an employee who simply "misplaced" money, *Abel v. Dubberly*, 210 F.3d 1334 (11th Cir. 2000); between an employee who touched four women in an inappropriate manner and an employee who touched only one woman in an inappropriate manner, *Egued v. Postmaster General of U.S. Postal Service*, 155 Fed. Appx. 439 (11th Cir. 2005); and between employees who downloaded onto their work computer material of varying degrees of inappropriateness, *Burl v. Principi*, 2006 WL 1208038 (11th Cir. 2006). The lesson in each of these cases is that differences of degree and type must be considered in evaluating purportedly similar instances of misconduct.

In this case, High has been charged with multiple instances of improper physical conduct as well as making inappropriate verbal remarks. High has not attempted to prove that Hughes engaged in any acts of physical harassment. It is uncontested that the acts for which Hughes was disciplined were exclusively verbal. This court does not discount the significance of verbal harassment in the workplace. However, as Wal-Mart rightly notes, not all sexual harassment is the same. See *Mendoza v. Borden*, 195 F.3d 1238 (11th Cir. 1999) (enumerating, in the context of a hostile work environment claim, a framework for distinguishing between different

11

forms of harassing conduct). The court can, of course, envision circumstances in which verbal harassment is more insidious and harmful than physical touching. And yet, under the "nearly identical" standard enunciated in *Maniccia*, there are categorical differences between verbal harassment alone and verbal harassment intertwined with physical conduct. These differences force this court to conclude that High and Hughes are not "similarly situated" employees for purposes of a *prima facie* claim.

### *III. Conclusion*:

Because this court has concluded that the conduct for which High was terminated included elements of both physical and verbal harassment, the conduct of a purported comparator must similarly contain these two elements. High, unable to point to an individual outside of the protected class who received less punishment for nearly identical misconduct, fails to establish a *prima facie* claim for disparate discipline. The court will therefore grant Wal-Mart's motion for summary judgment by a separate order.

Done this 29th day of September, 2006.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE